DEYO v. THOMPSON.

(Supreme Court, Appellate Division, Third Department. June 28, 1900.)

1. BILLS AND NOTES—CONSIDERATION—PRESUMPTION—PROOF.

Where a note is not negotiable, and does not express consideration, there is no presumption of consideration, and the burden of proving it is on plaintiff.

2. SAME—EVIDENCE.

A note was given to plaintiff which did not express consideration. The evidence showed that plaintiff had worked for the maker for several years for a stated wage, which she had received; that there were yearly settlements on the basis of the contract price, and she had given receipts in full; that one year plaintiff had received extra compensation. The note was given on the same day that the maker of it made his will, in which no mention of plaintiff was made. Plaintiff made statements shortly after the maker's date which showed that she regarded the note as a gift. There was no evidence that the maker received from plaintiff a greater value than he paid for, and there was no moral obligation on his part, based upon an antecedent legal liability. When the note was delivered there was nothing said as to it being for additional payment, or anything to show that the maker recognized any obligation on account of plaintiff's past services. Held, that the evidence did not show a consideration for the note.

Kellogg and Edwards, JJ., dissenting.

Appeal from special term.

Action by Helen Deyo against Charles L. Thompson, as executor of the will of Charles E. Thompson, deceased, on a note given by deceased. Judgment for plaintiff, and defendant appeals. Reversed.

The action was brought to recover the amount of a note of which the following is a copy: "$300. St. Remy, Ulster County, N. Y., May 7, 1898. On demand, I promise to pay Helen Deyo three hundred dollars. C. E. Thompson."

Argued before PARKER, P. J., and EDWARDS, MERWIN, SMITH, and KELLOGG, JJ.

Maurice W. Eltinge, for appellant.
Bernard & Van Wagonen, for respondent.

MERWIN, J. The contest in this case was over the question whether there was a consideration for the note. The referee finds that the note was made and delivered to plaintiff by Charles E. Thompson in consideration and in payment for services previously rendered by plaintiff for him and at his request, and was in addition to any sums that had been previously paid by him to plaintiff for the same. Upon the trial the plaintiff presented the note, proved its execution, put it in evidence, and then rested. The defendant moved for a dismissal of the complaint upon the ground, among others, that no consideration had been shown. The motion was denied, and defendant excepted. Upon the part of the defendant it appeared that Mr. Thompson was a farmer, and that the plaintiff had worked for him for many years; that he died on July 20, 1898, leaving a will in which no mention was made of the plaintiff. Proof was given of several statements made by plaintiff soon after the death of Mr. Thompson. One witness testified that he said to plaintiff that they (referring to Thompson's heirs) "got a nice present," and asked her what she got,

and she said "he gave her a duebill for $300, and a home, but had a dead man's word for that." Another witness testified that, upon the day the will of Mr. Thompson was read, she said to the plaintiff, "Is it possible Uncle Charles has not remembered you in his will?" and she replied that he had given or left her $300; that the witness then asked her, "Why was not your name mentioned in the will?" and she replied, "He didn't care to have the rest to know it; there might be a fuss,—or something like this." Another witness testified that just after the funeral the plaintiff told her that Mr. Thompson left her $300. The defendant then called as a witness the plaintiff. She testified that a book shown her was Mr. Thompson's account book; that it contained her account with Mr. Thompson, and that they settled each year by that book; that when she had such settlements she signed her name to receipts in full, at various times; that on July 11, 1898, she received from Mr. Thompson $25, which is charged to her by him in his book at that date. The accounts in the book between the plaintiff and decedent were then offered in evidence by the defendant and received. In the first entry in these accounts it was stated that the plaintiff on April 1, 1878, went to work for the decedent for $3 a month and house rent. Under date of April 1, 1879, it was stated that she begins her work at $5 a month. From this date to January 1, 1898, there are entries of payment from time to time amounting to $60 a year, except that in 1895 the payments were $90. There were several receipts for payment in full to date; the last one being January 1, 1898. An account of the plaintiff for services from June 1, 1898, was paid by the defendant after the death of Mr. Thompson. Upon her cross-examination by her counsel she testified that she went to Mr. Thompson's May 3, 1869, and was there till his death, and she described the character of her services; that three years before his death he was confined to his bed by illness for three months, and that she and Mr. Hall took care of him; that when she went there, in 1869, she went under a contract with Mr. Thompson. She was then asked the question, "What was the terms of the agreement under which you went into the employment of Mr. Thompson?" This was objected to by defendant as being incompetent under section 829 of the Code of Civil Procedure. The objection was overruled, and defendant excepted. The answer was, "He was to pay me five dollars a month when I went there; that he could not afford to pay me more, but he said it would be all made up to me." The following questions were also asked, and answers received, under like objection, ruling, and exception:

"Q. Was there subsequent to that time any other or different agreement made by and between you and Mr. Thompson in regard to your services? Ans. No. Q. From whom did you receive this note [the one in suit]? Ans. From Charles E. Thompson. Q. Where? Ans. At his house, on the 7th day of May, 1898,—the same day it was written. Q. What did he say at the time he delivered the note to you? He told me that in time I must present it to young Charley, and he would pay me. Q. Was there anything more that he said to you concerning the note? A. He said he expected some money in a few days, and when it came in he would pay these notes."

It is claimed by the defendant that the court erred in overruling the objections, under section 829, to the above questions. Assuming,

however, that the evidence was properly admitted, was there in the case sufficient proof of a consideration?   The note was not negotiable, and did not express consideration.   In Carnwright v. Gray, 127 N. Y. 92, 27 N. E. 835, 12 L. R. A. 845, it was held, of such a note, that it imported a consideration, and that the burden of showing a want thereof was upon the defendant.   This decision was based on the provisions of the Revised Statutes (part 2, c. 4, p. 768, 1 Rev. St.) on the subject of promissory notes.   These provisions were repealed by the negotiable instruments law (chapter 612, Laws 1897), and I find no provision in that law that will allow us to hold that a note like the present one imports a consideration.   In the Carnwright Case it was evidently considered that, in the absence of a statutory provision, there was no presumption of consideration, and that the burden of proving it was upon the party who brought the action.   And that seems to be the rule.   1 Daniel, Neg. Inst. (4th Ed.) § 162.

It is claimed that the note was given as additional compensation for services.   The character of the services, as testified to by the plaintiff, was such as to indicate that the services might be worth more than the contract price.   There is, however, no proof of the actual value.   At the time the note was delivered nothing appears to have been said by the decedent that the note was given for additional payment, or that the decedent then recognized any obligation, legal or moral, on account of the past services of plaintiff.   In 1895 (the year the decedent was sick for three months) she had received an additional payment.   The note was given the same day the will was made, and the statements shown to have been made by the plaintiff soon after the death, and which the plaintiff does not deny, show that the plaintiff regarded the note as a gift, and upon the same basis as a legacy.   The inference is that the decedent so regarded it.   Clearly, as to plaintiff's services, there was no obligation on the decedent, enforceable at law or equity, to make further compensation.   She had been paid the contract price, and had settled year after year on that basis.   There is no proof that the decedent received from the plaintiff a greater value than he paid for.   Nor was there any moral obligation based upon an antecedent legal liability.   In 1 Pars. Cont. (8th Ed.) 434, the rule as to moral obligations is stated as follows:

"A moral obligation to pay money or to perform a duty is a good consideration for a promise to do so, where there was originally an obligation to pay the money or to do the duty, which was enforceable at law but for the interference of some rule of law."

The statement of Thompson in 1869, if made as testified by the plaintiff, left the matter entirely to the option of the decedent.   So far as it appears, it was never again referred to.   The burden was on the plaintiff to show a sufficient consideration.   This, I think, she has failed to do.   There was only a gift of a promise in the shape of a note, and, if so, the note is not enforceable.   Whitaker v. Whitaker, 52 N. Y. 368, 373.   It follows that the judgment must be reversed. Judgment reversed on the law and the facts.   Referee discharged, and new trial granted.   Costs of appeal to appellant to abide the event. All concur, except KELLOGG and EDWARDS, JJ., dissenting.