## CARNAHAN et al. v. PEABODY et al.

District Court, S. D. New York. March 7, 1929.

Calvin I. Hoy and Joseph Renard, both of St. Louis, Mo., Evan B. Lewis, of Philadelphia, Pa., and Charles W. Letzgus, of Camden, N. J. (Evans, Hunt & Rees, of New York City, of counsel), for plaintiffs.

Taylor, Blanc, Capron & Marsh, of New York City (George S. Mittendorf and Ramsey Clayton, both of New York City, of counsel), for defendants Peabody and Farmers' Loan & Trust Co.

Carter, Ledyard & Milburn, of New York City (J. M. Richardson Lyeth and Leslie D. Dawson, both of New York City, of counsel), for defendant Astor.

THACHER, District Judge (after stating the facts as above). Originally plaintiffs sued as members and representatives of a class composed of all the heirs and descendants of Valentine and Christopher Emerick, asserting the right to an accounting from the defendants of property alleged to

have been held by John Jacob Astor, Sr., deceased, under trusts declared by John Nicholas Emerick in favor of the descendants of his two brothers, Valentine and Christopher. The nature of the suit and the reasons for the dismissal of the first amended bill of complaint are indicated in Carnahan v. Peabody (D. C.) 29 F.(2d) 412. It was there held that the trusts alleged to have been created by John Nicholas Emerick in favor of the descendants of his two brothers, Valentine and Christopher, were invalid under the rule against perpetuities, and that upon his death his heirs and next of kin succeeded to his estate, including the right, if any there was, to an accounting of the property here in question.

Accepting that decision as correct, plaintiffs now move to amend the bill, so as to change the form of this suit to one brought by them as members and representatives of a class composed of all the heirs at law and next of kin of John Nicholas Emerick. Thus by amendment it is sought to reframe the bill, so as to assert in behalf of John's heirs and next of kin rights asserted in the prior bill in behalf of the heirs and descendants of Christopher and Valentine. The facts alleged are substantially the same, amendment being necessary because the plaintiffs did not correctly apprehend their legal significance and failed to realize that the alleged trusts were void. Defendants oppose amendment solely upon the ground that the proposed amended bill is insufficient and without equity.

█ If the proposed bill were insufficient for the same reasons which led to the dismissal of the prior bill, no doubt amendment should be refused, but by the proposed amendment the objections to the prior bill are eliminated. To deny the motion to amend for defects in the amended pleading, not considered on the prior motion to dismiss, would seriously prejudice the right to review a determination in form discretionary, but in fact going to the merits of plaintiffs' cause of suit. Proper practice in such case is to grant the motion to amend, and then consider, upon motion to dismiss, all questions not previously decided which go to the sufficiency of the bill as amended. Substantial rights of the parties are not affected by the amendment, nor has the prior bill of complaint been answered. There can, therefore, be no prejudice to the defendants in allowing the amendment, and it accordingly will be allowed in furtherance of justice. The form of the decree already entered may be amended nunc pro tunc, so as to permit the filing of the proposed second amended bill of complaint which is filed herewith.

█ The sufficiency of the bill as amended then comes up upon the motion to dismiss. Not unmindful of the care which should be exercised, to the end that persons who assume to represent and sue in behalf of all the members of a class too numerous to be brought before the court should fairly represent the interests or rights involved (Smith et al. v. Swormstedt et al., 16 How. 288, 303 [14 L. Ed. 942]), briefs were requested on the right of these plaintiffs to maintain this suit in the interest of all the heirs and next of kin of John Nicholas Emerick. Counsel, having carefully studied and ably presented the question, are now in agreement that the plaintiffs have the right to maintain a representative suit on behalf of themselves and all other heirs and next of kin of John Nicholas Emerick. The question does not, therefore, require extended consideration. The right to bring a representative suit is recognized by equity rule 38, which provides: "When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole."

That the heirs at law and next of kin of John Nicholas Emerick constitute a class too numerous to be brought before the court is alleged, and is not to be doubted. There is a common interest in the subject-matter of suit. The class is one in which the members are constantly changing by death and succession. Any attempt to ascertain who they all are, and to make them all parties, would long delay and probably prevent determination of the substantial rights which are asserted, and which in justice to all concerned should be soon determined. Under such circumstances, representation of all by certain of the parties in interest is permitted for convenience and to prevent a failure of justice. Smith et al. v. Swormstedt et al., supra; Supreme Tribe of Ben-Hur v. Cauble, 255 U. S. 356, 41 S. Ct. 338, 65 L. Ed. 673. That one or more of the heirs or next of kin of a decedent may sue in representation of all is well settled. Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260; Van Bokkelen v. Cook, Fed. Cas. No. 16831, 5 Sawy. 587; Alger v. Anderson (C. C.) 78 F. 729, 734. Accordingly this suit is properly brought in representation of all the heirs at law and next of kin of John Nicholas Emerick, and this court has jurisdiction to determine the rights asserted in their behalf.

The facts upon which the right to an ac-

counting is predicated, as alleged in the bill, in brief are as follows: On June 20, 1787, John Jacob Astor, Sr., and John Nicholas Emerick entered into a written partnership agreement, which was to apply to all business transactions in which either should engage. This partnership continued until the death of Emerick on December 16, 1816, at which time Astor took over all of the copartnership interests, for which neither he nor his heirs, descendants, legal or personal representatives, or successors in trust have ever accounted. Prior to his death, and on October 24, 1815, Emerick executed an instrument in which he certified that he had left in trust with his partner John Jacob Astor his estate for a period of 90 years. On October 28, 1815, Astor acknowledged and accepted the trust in writing and assumed the responsibilities and duties connected therewith. This trust, it is alleged, was and is void under the rule against perpetuities, but by reason of its failure "a resulting trust arose upon the death of John Nicholas Emerick, which immediately vested in favor of his heirs at law and next of kin," of which resulting trust Astor was trustee. The assets of Emerick on October 24, 1815, were $1,000,000, a number of ships, 35 acres of land in New York City, 4,000 acres of land in Berks county, Pa., 300 acres of land in Germantown, Pa., and other small acreages. All of these assets and properties belonged to Emerick and Astor as copartners, and were never accounted for by Astor, or by his heirs, descendants, legal representatives, or successors in trust, but passed to his heirs and assigns, who have not accounted for the same to the heirs and next of kin of Emerick. Emerick's will, as alleged in the prior bill of complaint, is set forth, but no claim is asserted thereunder.

From these allegations it is apparent that the bill is the usual one for a partnership accounting. There was no resulting trust, because the only property "left in trust" was Emerick's interest in partnership property. Upon failure of the trust, the partnership interest reverted to Emerick. The assets of the partnership were not in any way disturbed. Presumably they continued, as before, to be held by Astor under the alleged agreement of partnership, and he became accountable for them upon Emerick's death as the surviving member of the partnership, and not as a trustee under trusts which had failed. For the sake of clarity, the erroneous conception that Astor was accountable for partnership property in any other capacity than as a surviving partner should be dismissed from consideration, so that the nature of this suit may be correctly understood as the usual suit for a partnership accounting, which becomes necessary when a partnership is terminated by the death of one of its members.

Emerick died in December, 1816. This suit was commenced on May 25, 1928, over 111 years after the right to bring it first accrued. If, as alleged, the partnership continued in active business from 1787 until 1816, and accumulated what in those days must have been regarded as an amazing fortune, its existence could not have been unknown to the heirs and next of kin of Emerick at the time of his death. Failure to discover a written agreement of partnership until the plaintiff Carnahan is said to have found one in an old trunk, over 100 years later, cannot excuse Emerick's heirs and next of kin, who were living when he died, from demanding an accounting in appropriate proceedings, commenced as such proceedings usually are, shortly after the death of one of the members of a partnership. The fact that no will had been found, or any such trust instrument as is alleged to have been executed, is no excuse for their failure to ask an accounting of the surviving partner. These instruments were invalid, and did not in any way affect the rights which are now asserted for the first time by the remote descendants of men and women living over 100 years ago, who are not alleged to have been ignorant of the existence of the partnership upon which the right to an accounting is predicated.

For a court at this time, after all possibility of adducing proof bearing upon the matters in controversy has gone, with the passage of more than a century, to attempt to determine the right to an accounting and thereupon to direct the defendants to account for the acts of their ancestors occurring over 100 years ago, would be an unconscionable act of injustice. If the heirs and next of kin of John Nicholas Emerick ever had a right to the accounting they now demand, the right has long since been abandoned by failure to assert it in any appropriate proceeding.

This suit is clearly barred by their inexcusable laches, and the second amended bill is accordingly dismissed.